UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                  :

RONALD P. GRELLA,                       :

                          Plaintiff,         :

         -against-                    :

JO ANN B. BARNHART,            :
Commissioner of Social Security,    :

                        Defendant.     :
------------------------------------------------------------------ X

|  |  |
|---|---|
| | 04 CV 3513 (ARR)(RML) |
| | NOT FOR PUBLICATION |
| | OPINION AND ORDER |

ROSS, United States District Judge:

       Plaintiff Ronald P. Grella brought this action pursuant to 42 U.S.C. §§ 405(g) to review

defendant Social Security Commissioner Barnhart's adoption of the decision of the

Administrative Law Judge ("ALJ") denying his request for Supplemental Security Income

("SSI") benefits. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c).

Plaintiff has cross-moved for judgment on the pleadings. For the reasons stated below,

defendant's motion is denied, and plaintiff's cross-motion is denied.

## BACKGROUND

A.     Procedural Background

       Plaintiff applied for SSI benefits on February 11, 1982, alleging an inability to work

due to depression, substance addiction, and neck, back, and knee problems. R. 80.[1] This

application was denied, and no subsequent appeal was taken. R. 15. Plaintiff filed a second

---

[1]"R." refers to the administrative record filed with the court by defendant Commissioner.

application on February 7, 1994, alleging disability beginning January 2, 1994. R. 65-67, 68-72, 73. This application was granted, with an onset date of February 1, 1994. R. 73.

Plaintiff's February 11, 1982 application was reopened pursuant to the Remedial Order in Dixon v. Shalala, 792 F.Supp.942 (S.D.N.Y. 1992), aff'd 54 F.3d 1019 (2d Cir. 1995), and was readjudicated for the period February 11, 1982 through December 31, 1983. R. 16, 45. In a redetermination dated January 18, 2000, plaintiff was informed that the initial determination denying his February 11, 1982 application was correct. R. 81, 82-84.

At plaintiff's request, an administrative hearing was held on April 13, 2000, before administrative law judge ("ALJ") Leonard Ryan, at which time plaintiff appeared and testified. R. 21-31. An additional hearing was held on May 10, 2000, at which plaintiff appeared with a representative from the Legal Aid Society, and again testified. R. 32-64. ALJ Ryan considered plaintiff's claims de novo, and by decision dated April 17, 2001, denied plaintiff's application because he had engaged in substantial gainful activity for longer than six months following the initial denial of that application. R. 17. This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 20, 2004. R. 6-8. This action timely followed.

B.    Factual Background

Plaintiff served in the Marine Corps from 1974 to 1980. R. 38, 44. After he was discharged, he worked as a landscaper and as an installer of fire extinguishers until 1982. R. 33-40. He testified that he stopped working in 1982 when he entered the Phoenix House for drug and alcohol rehabilitation. R. 37. According to plaintiff, he was an inpatient at Phoenix House for approximately three years. Id. Plaintiff started working again in 1984 as a truck

driver, which was work arranged by Phoenix House as part of a six month "reentry" to society phase of his treatment. R. 40-41. Plaintiff worked as a truck driver for multiple companies between 1984 and 1994, at which time he alleged disability resulting from job-related injuries. R. 43-44.

Social Security Administration records show that plaintiff had the following earnings between 1984 and 1994:

| | | | |
|---|---|---|---|
| 1984 | $7,356.29 | 1990 | $ 22,274.66 |
| 1985 | $ 26,791.44 | 1991 | $ 22,777.53 |
| 1986 | $ 32,777.87 | 1992 | $ 23,209.97 |
| 1987 | $ 8717.18 | 1993 | $ 23,860.14 |
| 1988 | $ 23,498.36 | 1994 | $ 1,376.63 |
| 1989 | $ 24,026312 | | |

R. 109.

## DISCUSSION

A.    The Standard of Review

This case comes to the court for review of the Commissioner's decision that the plaintiff is not disabled.

Under the Social Security Act, a "disability" is defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is of such severity that he is unable to perform his previous work and, given his age, education, and work experience he is not able to engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A).

The court's role in reviewing the decisions of the Social Security Administration

("SSA") is narrowly confined to assessing whether the Commissioner applied the correct legal

standards in making his determination and whether that determination is supported by

substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985

(2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is

defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as

adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420,

1427, 28 L.Ed.2d 842 (1971) (citation omitted).

B.    The Dixon Remedial Order

Mr. Grella seeks review of his 1983 application for SSI benefits pursuant to the

Remedial Order in Dixon v. Shalala, 792 F.Supp.942 (S.D.N.Y. 1992), aff'd 54 F.3d 1019 (2d

Cir. 1995). Under the Remedial Order, applications filed between June 1976 and July 1983 for

which benefits were denied at the second step of the sequential analysis, based upon a finding

that the applicant did not have a severe impairment, were eligible for readjudication. The

Remedial Order required the Commissioner to make reasonable efforts to retrieve the

claimant's original claim file. Id. at 1034. For class members whose records could not be

located, the Remedial Order provided for certain rebuttable presumptions, which would serve

to reduce the number of cases to be readjudicated. Id. Of significance here, "there will be a

rebuttable presumption that a class member is not disabled if . . . he or she was employed for at

least six months following the denial or termination [of his claim]." Id. at 1034-35.

In this case, despite due diligence, the SSA was unable to locate the records regarding

plaintiff's 1982 application and the resulting denial of benefits. Accordingly, readjudication

was proper. The ALJ found, however, that plaintiff was presumed not to be disabled because he had engaged in substantial gainful activity for greater than six months after the denial of benefits.

The Commissioner has established specific earning guidelines to determine whether an applicant has engaged in substantial gainful activity. These guidelines provide that a claimant is engaged in substantial gainful employment if he is working and earning more than the regulatory limit. 20 C.F.R. § 404.1574(b). Plaintiff consistently had average monthly earnings substantially greater than the regulatory limit of $300 for 1984 through 1989, and $500 for 1990 through 1993. Thus, plaintiff was engaged in substantial gainful employment during this period. Accordingly, the ALJ determined that the negative Dixon presumption applied and plaintiff was not entitled to benefits for the period at issue.

C.   Plaintiff Rebutted the Presumption of Non-Disability

Under the terms of the Dixon Remedial Order, the negative presumption that plaintiff was not disabled is rebuttable. In his complaint, plaintiff alleges that he submitted evidence, namely a 1994 memorandum signed by both Mr. Grella's social worker, Alexandra Herchick, and his psychiatrist, Dr. Gero Diels (the "Herchick memo"), that effectively rebuts the presumption of non-disability arising due to his subsequent employment.[2] Herchick and Diels

---

[2]Plaintiff also argues that the Commissioner failed to consider the evidence offered to rebut the presumption of non-disability. This argument fails. ALJ Ryan took an especially active role in attempting to gather documents regarding plaintiff's medical condition for the period at issue. Further, although he originally sought to resolve the matter within two weeks of the May 10 hearing, see R. 62-63, ALJ Ryan extended this deadline in order to allow plaintiff to submit additional records, including the 1994 Herchick memo, and legal argument regarding its significance. ALJ Ryan did not issue his decision denying plaintiff's application until April 17, 2001, more than eleven months after the May 10 hearing and well after receiving the Herchick memo and plaintiff's argument regarding its significance. Accordingly,

stated that "[s]ince discharge from the Marine Corps in 1980, Mr. Grella has experienced

serious emotional and vocational difficulties – paranoia, depression, explosive outbursts,

flashbacks, poor concentration, and social isolation." R. 1587; undated duplicate at R. 1629.

Additionally, the Herchick memo states that Mr. Grella had been "[u]nable to work steadily

since discharge from the service" and that he had "had over twelve jobs as a truck driver from

1983-1994, most lasting only for several months." Id.

The Dixon Remedial Order does not specify the quantum or weight of evidence needed

to rebut the presumption of non-disability. However, the court agrees with plaintiff that the

context of the Order is instructive. At the time of its drafting, the court and parties were

acutely aware of the fact that tens of thousands of files of class members had already been

destroyed during the litigation. The agency worried that reconstructing this large number of

files would impose enormous and unwarranted burdens on the agency. See Dixon v. Shalala,

54 F.3d at 1034. The presumption of non-disability was designed to weed out those cases in

which there would be no evidence available to support the disability claim. Id. at 1034-37.

The burden to rebut the presumption of non-disability, however, serves to shift only the

burden of production, not the burden of persuasion, to the plaintiff. This conclusion is

consistent with Federal Rule of Evidence 301, which states:

> In all civil actions and proceedings not otherwise provided for by
> Act of Congress or by these rules, a presumption imposes on the
> party against whom it is directed the burden of going forward
> with evidence to rebut or meet the presumption, but does not shift
> to such party the burden of proof in the sense of the risk of

---

it is evident that the ALJ's failure to mention the Herchick memo in his decision does not
imply, as plaintiff argues, that he did not consider it.

nonpersuasion, which remains throughout the trial upon the party
on whom it was originally cast.

Once a party meets the burden of production, the presumption is "no longer relevant"
and "simply drops out of the picture." St. Mary's Honor Center v. Kicks, 509 U.S. 502, 508,
113 S.Ct. 2742, 2746 (1993) (interpreting the burden shifting scheme of McDonnell Douglas
Corp. v. Green, 411 U.S. 792 (1973), which "operates like all presumptions, as described in
Federal Rule of Evidence 301"). There is no reason for this court to conclude that the Dixon
court sought to require any greater weight of evidence to rebut the presumption of non-
disability. Moreover, the Remedial Order's provision requiring the "SSA [to] consider existing
evidence of record in the light most favorable to the class member," R. 1656-57, is consistent
with imposing on the plaintiff only a light burden of production to rebut the presumption.

Plaintiff met this burden and effectively rebutted the presumption of non-disability.
Although the court finds the Herchick memo to be ambiguous, interpreted in the light most
favorable to plaintiff, Herchick opines that ever since his discharge from the Marine Corps in
1980, plaintiff had been disabled and unable to work steadily. This retrospective diagnosis,
regardless of its ultimate persuasive value, is sufficient to rebut the presumption of non-
disability and requires the SSA to fully develop the case and adjudicate it according to the
regular five-step evaluation process.[3] Accordingly, the case is remanded for development and
adjudication on the merits. Upon remand, the Commissioner is directed to address plaintiff's

_____

[3]Pursuant to the Remedial Order, the SSA is directed to "use its regular policies on
evidence development to assist the class member in obtaining evidence relevant to the
readjudication of his or her claim," and to "readjudicate the claim from the class member's
earliest potential entitlement." R. 1594.

request that his application be deemed a concurrent claim under Title II extending the time of

review back to January 1, 1981.

## CONCLUSION

For the above stated reasons, defendant's motion for judgment on the pleadings is

denied, and plaintiff's cross-motion is granted.[4]  The Clerk of the Court is directed to enter

judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: June 14, 2005
       Brooklyn, New York

---

[4] Although plaintiff alternatively requests remand solely for calculation of benefits, the court believes readjudication on the merits is more appropriate.

SERVICE LIST:

*Counsel for Plaintiff:*

Kenneth R. Stephens
Legal Aid Society
Civil Appeals and Law Reform Unit
199 Water Street
New York, NY 10038

*Counsel for Defendant:*

Margaret A. Donaghy
Special Assistant United States Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201